B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>Brian Quinlivan | **DEFENDANTS**<br>Noah Katz, an idividual, Belinda Novik, an individual, and Barry Katz, an individual |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Tamar Terzian<br>Terzian Law Group<br>1122 E. Green St. Suite 210<br>Pasadena, CA 91106<br>818-242-1100 | **ATTORNEYS** (If Known)<br>Robert G. Harris<br>Law Offices of Binder and Malter<br>2775 Park Ave.<br>Santa Clara, CA 95050<br>(408) 295-1700 |
| **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
COMPLAINT FOR:

1. Avoidance and Recovery of Post-Petition Transfer Under 11 U.S.C. §§ 549 & 550(a)
2. Accounting
3. Conversion
4. Declaratory Relief

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☒ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☒ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et. seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ unknown |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES ||||
|---|---|---|---|
| NAME OF DEBTOR || BANKRUPTCY CASE NO. 22-40396 ||
| DISTRICT IN WHICH CASE IS PENDING Northern District || DIVISION OFFICE Oakland | NAME OF JUDGE Charles Novack |
| RELATED ADVERSARY PROCEEDING (IF ANY) ||||
| PLAINTIFF Brian Quinlivan | DEFENDANT Noah Katz, an idividual, Belinda Novik, an individual, and Barry Katz, an individual || ADVERSARY PROCEEDING NO. 23-04010 |
| DISTRICT IN WHICH ADVERSARY IS PENDING Northern District || DIVISION OFFICE Oakland | NAME OF JUDGE Charles Novack |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) ||||
| DATE 6/1/2023 || PRINT NAME OF ATTORNEY (OR PLAINTIFF) Tamar Terzian ||

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

TERZIAN LAW GROUP, APC
1122 E. Green Street
Pasadena, Ca 91106
Tel: (818) 242-1100
Fax: (818) 242-1012
Tamar Terzian (CA Bar No. 254148)
tamar@terzlaw.com

Attorneys for Plaintiff and Creditor,
Brian Quinlivan

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DIVISION OF CALIFORNIA

# OAKLAND DIVISION

| Brian Quinlivan,<br><br>               Plaintiff,<br><br>vs.<br><br>NOAH KATZ, an individual, BELINDA NOVIK, an individual, and BARRY KATZ, an individual,<br><br>               Defendant(s). | CASE NO. 22-40396<br><br>Complaint Filed:<br><br>Assigned to Honorable Charles Novak<br><br>**COMPLAINT FOR:**<br><br>1. **Avoidance and Recovery of Post-Petition Transfer Under 11 U.S.C. §§ 549 & 550(a)**<br>2. **Accounting**<br>3. **Conversion**<br>4. **Declaratory Relief** |
|---|---|

Brian Quinlivan, ("Plaintiff"/ "Creditor") hereby alleges against Noah Katz, Belinda Novac and Barry Katz (collectively, "Defendants") as follows:

## NATURE OF ACTION AND JURISDICTION

1. In compliance with Local Bankruptcy Rule 7008-1, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151, 157(b)(1) and (2), and 1334, as well as General Order No. 13-05 of the District Court for the Central District of California, on the basis that this action is a core proceeding as defined by 28 U.S.C. §§ 157(b)(2)(A), (E), (N) and (O), and arises in or under the chapter 11 bankruptcy case of In re Artesian Builds, 1:20-bk-10276-VK (the "Bankruptcy Case") currently pending before this Court.

2. Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) in that the instant proceeding is related to the Bankruptcy Case presently pending under Title 11 of the United States Code in the United States Bankruptcy Court for the Central District of California.

3. This Bankruptcy Case was commenced by the filing of a voluntary petition by Debtor under Chapter 7 of Title 11 of the United States Code (beginning at 11 U.S.C. § 101, et seq., the "Bankruptcy Code") on April 22, 2022 (the "Petition Date").

4. The Plaintiff's knowledge and investigation into the financial and business affairs of Debtor to date reveals numerous assets Debtor failed to disclose. Debtor has also hampered the investigation efforts by obfuscation and lack of candor.

5. Plaintiff is informed and believes that Defendants, at all times, relevant hereto is and was the principal and equitable owner of the Debtor and combined various assets.

## PARTIES

6. Plaintiff brings this action solely in his capacity as a Creditor of the Debtor.

7. Defendant Noah Katz is the principle of the Debtor in this Bankruptcy Case. At all relevant times was an individual residing in California, and is currently an individual residing in North Carolina. Noah Katz is an "insider" of Debtor as that term is defined in Section 101 of the Bankruptcy Code.

8. Defendant Belinda Novik is a silent principle of the Debtor in this Bankruptcy Case, and at all relevant times was and is an individual residing in North Carolina. Belinda Novik is an "insider" of Debtor as that term is defined in Section 101 of the Bankruptcy Code.

9. Defendant Barry Katz is the principle of the Debtor in this Bankruptcy Case, and at all relevant times was and is an individual residing in North Carolina. Barry Katz is an "insider" of Debtor as that term is defined in Section 101 of the Bankruptcy Code.

## OPERATIVE FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS

10. On April 22, 2022, Debtor filed for protection under subchapter V of chapter 11. The Debtor's assets included various equipment and non-tangible items such as its customer lists, trademarks and licenses. The Debtor was in the business of creating custom computer central processing units. The Debtor had two facilities, one based in North Carolina and the other in Oakland, California. Three weeks *after* the operations ceased, the Debtor continued to generate income from existing orders and new orders from unknowing customers that were unaware of the internal decision to halt business and refuse refunds. The customers in each aforementioned group would never receive the orders or would not receive refunds for orders that were not going to be fulfilled. Noah Katz ("Noah"), who was the principal of the Debtor knew that the Debtor was never going to fill such orders, and knew this as he continued to advertise and accept payments for the Debtor's products. *See* Docket No. 219.

11. Brian Quinlivan is the former Chief Marketing Officer of the Debtor with intimate knowledge of the operations and financial affairs of the Debtor. His personal knowledge of the financial affairs and sales of Debtor's computers was not adequately considered or relied upon by the Bankruptcy Court in evaluating the Debtor's various plans of reorganization and the Debtor's schedules, which included a list of assets and its prepetition financials.

12. On March 1, 2022, the Debtor's reputation and industry were severely

damaged after a streamer asserted during a live-streamed event, that Noah denied her a sweepstakes prize in a drawing. Unfortunately, the streamer's complaint was retweeted over 8,000 times. Multiple other streamers also chimed in about the prizes they were denied by Defendant Noah.

13. Upon public outcry and request for Noah to step down as CEO, he, Belinda Novik, and Barry Katz, refused to cater to public request, and instead opted to terminate Plaintiff (who had been working under the guise of being a 14% interest in the Debtor) and approximately 70 other staff members. Sales continued to be accepted by Noah, and the company's name was changed to AB Mining, where the Katz family continued to conduct business for several months after bankruptcy was filed.

14. When the Debtor ceased operations, numerous creditors and employees of the Debtor were never reimbursed for orders and payments made to the Debtor. Due to Noah's false representations and transferring of the Debtor's funds, the Debtor was forced to close down its operations and lay off all of its employees. At that time, the Debtor was generating almost $3 million per year from sales of the custom processing units and had the means to expand its business globally. This expansion had already been under way since mid-2021 via a separate entity known as Artesian Canada. This entity was run by a Canadian contractor, with all proceeds of the entity going to the Katz family. Due to proceeds of Artesian Canada being unlisted in the Debtor's liquidation analysis, it can be confidently presumed that this revenue was not ever held by the Debtor.

15. On May 5, 2022, Debtor filed his Schedules and Statement of Financial Affairs. See Docket Nos. 31-34. On May 12, 2022, Debtor filed amended Schedules and Statements. See Docket No. 47 & 48.

16. Debtor did not list any interest in Paypal (which Noah Katz acknowledged in creditor hearings was synonymous with his personal account), Coinbase (which Noah Katz circulated over a million dollars in sales without any acknowledgment of the account), Etsy (which continued being active under the changed company name "AB

Mining" before and after bankruptcy was filed), and other accounts used by the Debtor in its schedules and Statement of Financial Affairs or in his amended Schedules and statements. Evidence of all these accounts and their transactions have been submitted and declared upon by multiple creditors.

17. Plaintiff is informed and believes that Defendants had access to concealed accounts, several customers declaring that they sent monies to these concealed accounts, and Debtor's testimony at the 341(a) meeting of creditors, Debtor allegedly transferred funds back into its Debtor in Possession account. Despite this, the monthly operating reports do not properly itemize such transfers.

18. Plaintiff is informed and believes that defendant, Noah Katz admitted that he received $15,000 for "crisis management", and "spent it" prior to filing for bankruptcy.

19. Plaintiff is informed and believes that during the second meeting of creditors, defendant Noah Katz admitted that he "co-owned the PayPal account", where he commingled business finances with his personal finances. Defendant further stated that the Debtor PayPal account was never differentiated from his personal account, because he felt there was no need to separate them.

20. Plaintiff is informed and believes that defendant Noah Katz, conducted large withdrawals of corporate funds to his personal bank account, admitting to commingling $308,000 from the corporate PayPal account to his personal bank account.

21. Defendants omitted material assets from the bankruptcy schedules, including but not limited to Artesian Canada, which Defendants were aware was affiliated with the Debtor. Defendants have done so with intent to hinder, delay, and defraud their creditors.

22. On information and belief, Debtor continues to operate businesses, under the nose of his creditors by engaging in complex business transactions with various personal family accounts in attempts to shield his assets from creditors, including but not limited to Artesian Canada and other accounts.

23. Belinda Novik and Barry Katz claimed that they provided a loan of at least $800,000 during its time of operation. Plaintiff is informed by Belinda Novik that this loan would never exceed $200,000 to $400,000, and was reflective of the amount given to Noah Katz as his graduation gift. This information that he was provided is contradictory to that which is stated as the amount loaned.

24. According to the secretary of state, there is no evidence indicating that Debtor ever filed annual reports in California or paid taxes to the franchise tax board. Artesian Future Technology, LLC was legally opened in the state of North Carolina, with no legal operative filings in the state of California.

25. Artesian Future Technology, LLC, which is currently noted as "administratively dissolved", was incorporated on January 8, 2018 in North Carolina. It is legally filed with two directors and officers: Noah Katz and Barry Katz. In spite of this, Debtors fraudulently conveyed that Noah Katz is the sole director and officer of Debtor, despite Barry Katz being legally listed as an officer on this LLC.

26. Barry Katz and Belinda Novik were referred to as "the board" on weekly leadership calls throughout the duration of Debtor's operations, Further, Barry Katz and Belinda Novik being involved in the hiring, firing, operative, and financial decisions related to Debtor funds.

27. Plaintiff is informed and believes Noah Katz has personal cryptocurrency account having finances where he diverted funds of the Debtor

28. Several claims marked as "unknown", or why those attributed claims default to $0 for the benefit of the Debtor. Several creditors have testified, the majority of these other creditors also did not receive notice of their claims, or requests to specify what their amounts should be.

29. Plaintiff believes that while the creditors' claims were listed at $0, Defendants collectively had knowledge and access to the amounts that these creditors should have associated claims with, and believes they were omitted largely to prevent the Debtor from exceeding the amount of allowed claims in a Subchapter V filing.

30. The global compromise was between the Defendants only and did not involve any other creditors of the Estate. Debtor made several false representations that Plaintiff received the ability to purchase third party releases via email, therefore qualifying the sale to Defendants Barry Katz and Belinda Novik.

31. The Debtor then filed its Third Amended Subchapter V Chapter 11 Plan (the "Third Amended Plan"), after which the Bankruptcy Court entered an order approving the sale of assets pursuant to Bankruptcy Code section 363, rather than a compromise pursuant to Federal Rules of Bankruptcy Procedure ("FRBP") 9019. The Court approved the Third Amended Plan which included third party releases (the "Releases").

32. The Third Amended Plan's Third-Party Releases were non-consensual and relinquished the insiders of all their liability. While the Third-Party Releases were represented to the Bankruptcy Court to not include a bar against creditors pursuing direct claims against insiders in the State Court, that proved to be a misrepresentation to the Bankruptcy Court and to the creditors.

33. There was no offer or valuation set to any third-party releases or valuation of the Debtor at the time of the liquidation analysis.

34. On September 6, 2023, Mark Sharf proposed an offer to the Debtors to have Plaintiff not contest the $50,000 total creditor pool being proposed by the debtors if third-party releases were removed from their motion to compromise, making the plan consensual. Plaintiff approved this offer, and Debtors rejected it.

35. Plaintiff was told by Debtor's and its counsel that as a 14% owner, Plaintiff would be able to have his own hired personal Certified Public Accountant look through the financials of the inoperative company. Plaintiff made numerous written requests, and Defendants failed to provide an accounting.

36. Debtor made the representation that the financial records were "in shambles" and no accounting was provided or attached to the liquidation analysis of the Third Amended Plan of Reorganization.

37. Plaintiff repeatedly requested financial information and transactional history from Debtors relating to missing accounts from the liquidation analysis, such as Debtor's Coinbase account that circulated over one million dollars with written testimonials from multiple Debtor customers, as well as a Patreon account that ran for several months after bankruptcy was filed.

38. Defendant, Noah Katz, initially denied the existence of these financial accounts entirely, then provided information on record that they did exist but no longer contained monies.

## FIRST CLAIM FOR RELIEF

### Avoidance and Recovery of Post-Petition Transfer Under

### 11 U.S.C. §§ 549 & 550(a)

39. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

40. Plaintiff is informed and believes, and based thereon alleges, that as of the Petition Date, Noah Katz was the Chief Executive Officer, President of Debtor.

41. Plaintiff is informed and believes, and based thereon alleges, that Debtor transferred funds into his personal accounts on a regular basis before and after ceasing operations of the Debtor.

42. Debtor did not obtain Court approval for such Transfer to Noah Katz.

43. Accordingly, Plaintiff is entitled to avoid and recover the Transfer as an unauthorized post-petition transfer for the benefit of Debtor's Estate pursuant to Sections 549 and 550 of the Bankruptcy Code.

## SECOND CLAIM FOR RELIEF

### An Accounting

### (Against All Defendants)

44. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

45. Debtors have failed to make material disclosures of key financial accounts and transactions that have been acknowledged as missing from Debtor's liquidation analysis, such as the personal cryptocurrency account owned by Noah Katz, acknowledged to exist on record by Debtors' counsel. Further failures of material disclosures include entities AB Mining and Artesian Canada.

46. The Plaintiff and creditors are entitled to an accounting for all monies received by Defendant Noah Katz from Debtor.

47. The Plaintiff and creditors are entitled to an accounting for monies received by Defendant Belinda Novik.

48. The Plaintiff and creditors are entitled to an accounting for all monies received by Defendant Barry Katz.

## THIRD CLAIM FOR RELIEF

### Conversion

### (Against Noah Katz)

49. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

50. Plaintiff is informed and believes that Noah Katz operated the Debtor and had access and control over all bank accounts.

51. Plaintiff is informed and believes that during the pendency of the Bankruptcy Case Noah Katz, received post-petition distributions and derived from operations.

52. Accordingly, Plaintiff seeks damages from Noah Katz based on the amount derived from operations of the Debtor Post-Petition, exact amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### Declaratory Relief to Revoke Confirmation Order

53. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

54. Based on a false liquidation analysis, other assets undisclosed by Defendants and false material statements made to the Court.

55. Accordingly, Plaintiff seeks declaratory relief requesting revocation of the order confirming Debtor's plan.

## PRAYER FOR RELIEF

56. WHEREFORE, Plaintiff respectfully prays for judgment against Defendants as follows:

    a. On All Claims for Relief;

    b. An accounting to Plaintiff of all assets and accounts held in the name of Noah Katz;

    c. Revocation of the Order Confirming the Third Amended Plan of Reorganization;

    d. For costs of suits incurred therein, including, without limitation, attorneys' fees to the extent allowable under applicable law; and

    e. For such other and further relief as the Court deems proper.

Dated: June 1, 2023

/s/Tamar Terzian
Tamar Terzian
Attorney for Creditor, Brian Quinlivan